**HOMER NATIONAL BANK**

v.

**Eddie NAMIE and Alice Nomey Namie.**

Civ. A. No. 88–1926.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Feb. 21, 1989.

Curtis R. Shelton, Cook, Yancey, King & Galloway, Shreveport, for Homer Nat. Bank, plaintiff/appellee/cross-appellant.

Darrell R. Avery, Culpepper, Teat & Avery, Jonesboro, for Namies, defendants/appellants.

## MEMORANDUM OPINION

STAGG, Chief Judge.

The instant case is before the court on appeal from the judgment of the United States Bankruptcy Court (hereinafter, "Bankruptcy Court") for the Western District of Louisiana rendered on May 9, 1988. This court has jurisdiction pursuant to 28 U.S.C. § 158(a). Finding no error, the decision of the Bankruptcy Court is AFFIRMED.

STATEMENT OF THE CASE:

Mr. Eddie Namie and Mrs. Alice Nomey Namie are owners of a tract of land in Jonesboro, Louisiana. On March 17, 1986, Mr. and Mrs. Namie leased this property to John G. Mansoor and Mansoor's Mobile Home Sales, Inc. (hereinafter, "debtor"), the corporate lessee being the debtor in the bankruptcy proceeding from which this case arises. Mobile homes were placed on the leased premises for retail sales. After the lessees became delinquent on their rental payments, the Namies sued John G. Mansoor, individually, and the debtor in state court on November 6, 1986, and seized the mobile home at issue in this case.

Subsequently, on December 24, 1986, the debtor filed its petition under Chapter 7 of the Bankruptcy Code. The parties stipulated that sometime in January 1987, the Namies' attorney received the notice of the filing of the bankruptcy petition. That notice provided: "Upon filing of the petition, certain acts and proceedings against the debtor and the estate are stayed as provided in 11 U.S.C. § 362(a)." Exhibit J–8 to ¶ 8 of Pretrial Stipulation. Mr. Namie, an unsecured creditor, testified that he personally received a copy of the notice of the bankruptcy filing and reviewed it with his attorney. Trial Transcript at 20.

On January 22, 1987, a default judgment was rendered in the state court suit against Mr. Mansoor, individually. The judgment stated that it reserved all the Namies' rights against the debtor, as that defendant had filed a petition in bankruptcy. The judgment also purported to recognize a les-

sor's privilege on the mobile home in question. The mobile home was sold at a Sheriff's Sale on April 8, 1987 to Mr. Namie for $3,500. Mr. Namie shortly thereafter sold the trailer in question to a third-party for $9,500.

On March 10, 1987, prior to the sale, a Jackson Parish sheriff's deputy requested a mortgage certificate for the mobile home from the Louisiana Department of Public Safety. The administrator for the Office of Motor Vehicles responded by letter saying that no record of title existed for the mobile home. On April 3, 1987, Homer National Bank (hereinafter, "HNB") filed a proof of claim in the bankruptcy proceeding. Annexed as an exhibit to that proof of claim was an invoice and manufacturer's statement for certificate of origin identifying the mobile home as property of the debtor and, therefore, property of the estate.

On April 29, 1987, the bankruptcy trustee sent a notice of a proposed sale of the mobile home to HNB to all creditors in the bankruptcy case. The mobile home was sold to HNB on May 19, 1987 after the Bankruptcy Court approved the sale. However, HNB was unable to obtain possession of the Mobile Home, and this adversary proceeding was filed in the Bankruptcy Court.

The bankruptcy judge found that the Namies committed a willful violation of the automatic stay, and thus awarded HNB damages and attorney's fees. On appeal, the Namies present the following issues for review: (1) whether the automatic stay was violated; (2) if the stay was violated, was the violation willful; (3) whether the remedies in 11 U.S.C. § 362(h) are available to HNB; and (4) whether the damages awarded by the Bankruptcy Court were excessive. HNB has also appealed, urging contempt and state law conversion theories as alternate grounds to uphold the bankruptcy judge's rulings.

ANALYSIS OF LAW AND FACTS:

The standard of review of decisions of the Bankruptcy Court is well settled. The bankruptcy judge's findings of fact cannot be set aside unless clearly erroneous. Bankruptcy Rule 8013. A finding is clearly erroneous when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). However, the Bankruptcy Court's conclusions of law are subject to *de novo* review. *Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir.1986).

The Namies argue that the bankruptcy judge erred in finding that they violated the automatic stay. In the alternative, they argue that if the automatic stay was violated, the bankruptcy judge erred in finding the violation "willful." The automatic stay is contained in 11 U.S.C. § 362(a) and provides, in part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, ... operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title....

The scope of the stay in § 362(a) is extremely broad. All actions taken in violation of its terms are void, even where there was no actual notice of the existence of the stay. 2 *Collier on Bankruptcy* ¶ 362.03 at 362-31 (15th ed. 1988). This stay is effective upon the filing of a petition, whether voluntary, joint or involuntary. *Id.*

■ The debtor's bankruptcy petition was filed on December 24, 1986. The stay was, therefore, in effect from that date forward. Nevertheless, the Namies continued their seizure of the mobile home and had it sold at a sheriff's sale. The bankruptcy judge correctly found these actions to be violative of the automatic stay.

The automatic stay imposes a moratorium on all actions against the debtor or his property and assets. *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987). When the Namies continued their seizure of the mobile home, they violated § 362(a)(3), which prohibits any act to exercise control over property of the estate. The subsequent sheriff's sale violated § 362(a)(5), which prohibits the enforcement of any lien against property of the debtor. Additionally, when the Namies' state court judgment purported to recognize a lessor's lien on the mobile home, they violated § 362(a)(4), which prohibits any act to create, perfect or enforce any lien against the property of the estate. That these acts were committed is undisputed. *See* Pretrial Stipulation ¶¶ 3, 9, 11, 13 and 17.

The bankruptcy judge also found the violations willful. For purposes of § 362(h), "willful" has been interpreted to mean "deliberate or intentional." *In re Rinehart*, 76 B.R. 746, 756 (Bkrtcy.S.D.1987), *affirmed*, 88 B.R. 1014 (D.S.D.1988) This interpretation is consistent with the interpretation given to the term as used in § 523(a)(6), which relates to the nondischargeability of debts caused by willful and malicious injury. *See, e.g., In re Glazer*, 25 B.R. 329, 330 (9th Cir.B.A.P.1982).

Where there is actual notice of the bankruptcy petition, it must be presumed that the violation was deliberate or intentional. *Rinehart, supra.* Mr. Namie testified that he received notice of the filings from the bankruptcy court, took the notice to his attorney and they "looked it over." Trial Transcript at 20. He further testified that the attorney told him that he did not think Mr. Namie should be concerned with the notice. *Id.* In response to a question by the court, Mr. Namie admitted being aware that a bankruptcy petition had been filed. *Id.* The court recognizes that Mr. Namie may have relied on the advise of his counsel in ignoring the bankruptcy filing. Nevertheless, a violation of the automatic stay can be willful even if it occurred on the advise of an attorney. *In re Meinke, Peterson & Damer, P.C.*, 44 B.R. 105, 108 (Bkrtcy.N.D.Tex.1984); *see also*, 2 *Collier, supra* ¶ 362.11 at 362-73. It is clear that the Namies had actual knowledge of the bankruptcy filing, yet committed numerous acts prohibited in § 362 of the Bankruptcy Code. Accordingly, the bankruptcy judge did not err in finding the violations "willful."

■ The Namies contend that even if they committed a willful violation of the automatic stay, the remedies provided in 11 U.S.C. § 362(h) are not available to creditors. 11 U.S.C. § 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." The Namies contend that this section applies only to debtors injured as a result of a stay violation.

The Bankruptcy Code does not define the word "individual." The term is used in a variety of contexts throughout the Code. It is clear, however, that the term does not always refer exclusively to debtors. *Compare* 11 U.S.C. § 522(b) with §§ 321(a)(1), 507(a)(3)(A), 1129(a)(5)(A)(i) and 1171(a). Unfortunately, the legislative history does not deal specifically with this issue. *See* 1984 U.S.Code Cong. & Adm.News 576-606.

Not surprisingly, counsel for the Namies has cited no jurisprudential authority for the proposition that Congress intended to limit the remedy in § 362(h) exclusively to debtors. At least one court of appeals, however, has shed some light on the proper construction to be given to § 362(h). In *Budget Service Company v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir. 1986), the court held that the term "individual" includes corporate debtors. In so finding, the court stated: "We agree with the reasoning of the Bankruptcy Court in *In Re Tel–A–Communications Consultants*, 50 B.R. 250 (Bkrtcy.Conn.1985) that § 362(h) must be read in conjunction with the rest of § 362 and that its sanctions are not limited to the relief of an 'individual' in the literal sense." *Id.* at 292.

In order to determine the proper construction to be given to § 362(h), it is appropriate to reflect for a moment on the purpose behind the automatic stay. In this regard, the Fifth Circuit has said:

> The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment. The stay of pre-petition proceedings enables the bankruptcy court to decide whether it will exercise its power under § 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so, thereby preventing a "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts."

(Footnotes omitted). *Hunt v. Bankers Trust Company*, 799 F.2d 1060, 1069 (5th Cir.1986). Collier reiterates this point in observing that: "[O]ne of the benefits of the stay is creditor protection in a manner consistent with the promotion of the bankruptcy goal of equality of distribution." *Collier, supra*, ¶ 362.04 at 362–32.

It has been held previously that secured creditors have standing to enforce the automatic stay. *See, e.g., In re Reserves Development Corporation*, 64 B.R. 694, 699–700 (W.D.Mo.1986), *reversed on other grounds*, 821 F.2d 520 (8th Cir.1987). In that case, the Court noted the two basic goals of the new Bankruptcy Code. First, the Code protects the debtors from unscrupulous creditors. It prevents them from taking unfair advantage of a debtor while in a vulnerable financial position. Second, the new Code protects the rights of all creditors to share equally in the assets of the debtor's estate. *Id.* Similar comments are found in the legislative history. *See* 1978 U.S.Code Cong. & Adm.News 6297.

It should be generally assumed that Congress expresses its purpose through the ordinary meaning of the words it uses. *Escondido Mutual Water Co. v. LaJolla Indians*, 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984). To that end, "[a]bsent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive." *Boureslan v. Aramco*, 857 F.2d 1014, 1019, *rehearing granted*, 863 F.2d 8 (5th Cir.1988). *Cf. Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1115 (5th Cir.1988) ("The ascertainment of congressional intent with respect to the scope of liability created by a particular section ... must rest primarily on the language of that section."). These rules of construction guide the court's decision in this case. If Congress intended to limit the remedies in § 362(h) to debtors it could have done so by the simple expedient of replacing the term "individual" with "debtor." Congress chose not to do so, and this court is unwilling to impose limitations not supported by the statutory language, jurisprudence, or legislative history. Moreover, it seems illogical to conclude that Congress intended to limit § 362(h) to debtors when one of the principal purposes behind the automatic stay is to protect creditors from unequal treatment. Counsel for the Namies has simply failed to convince this court otherwise in his brief argument on this issue. Accordingly, the court finds that the bankruptcy judge did not err in imposing sanctions in this case pursuant to § 362(h). In light of this finding, no attempt has been made to resolve the "great uncertainty regarding the authority of Article I bankruptcy courts to adjudicate cases of civil contempt." *United States v. Revie*, 834 F.2d 1198, 1205 (5th Cir.1987), *cert. denied*, —

U.S. ——, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988); *see In re Sequoia Auto Brokers Ltd., Inc.*, 827 F.2d 1281, 1291 (9th Cir. 1987).

■ In the final issue before the court, the Namies contend that the bankruptcy judge erred in awarding excessive damages for their willful violation of the automatic stay. Damages, like other findings of fact, will not be reversed by this court unless clearly erroneous. *NCH Corporation v. Broyles*, 749 F.2d 247, 254 (5th Cir.1985); *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir.1988). Two experts testified in regard to the value of the trailer: Mr. Aubrey Capelan for HNB and Mr. Robert Greer for the Namies. Of the two experts, Mr. Capelan had extensive experience in refurbishing and reselling hundreds of mobile homes. Mr. Greer's experience, on the other hand, was substantially more limited. In light of the relative expertise of the two witnesses, this court cannot say that the bankruptcy judge was clearly erroneous in giving more weight to the testimony of Mr. Capelan. Pursuant to Mr. Capelan's testimony, the bankruptcy judge found that the mobile home had a fair market value of $10,290. Mr. Namie's present assertion that the mobile home was worth only $7,800 is rebutted by his own testimony that he was able to resell the mobile home, himself, for $9,500. As pointed out by counsel for HNB, Mr. Namie's own sale experience is destructive of the credibility of his expert. In sum, the bankruptcy judge correctly gave more weight to the testimony of Mr. Capelan in determining the amount of HNB's damages and that determination will not be upset by this court. *See* Bankruptcy Rule 8013 ("... due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.")

In conclusion, the evidence supporting a willful violation by the Namies of the automatic stay is substantial. The bankruptcy judge, therefore, did not commit error in awarding damages pursuant to 11 U.S.C. § 362(h). Accordingly, the decision of the bankruptcy judge is AFFIRMED.