<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-9012

                  FLEET MORTGAGE GROUP, INC.,

                     Defendant, Appellant,

                               v.

                       KENNETH A. KANEB,

                      Plaintiff, Appellee.

No. 98-9014

                  FLEET MORTGAGE GROUP, INC.,

                     Defendant, Appellant,

                               v.

                       KENNETH A. KANEB,

                      Plaintiff, Appellee.

No. 98-9017

                       KENNETH A. KANEB,

                     Plaintiff, Appellant,

                               v.

                  FLEET MORTGAGE GROUP, INC.,

                      Defendant, Appellee.

           APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
                     FOR THE FIRST CIRCUIT

                                 

                             Before

                    Torruella, Chief Judge,
                    Lipez, Circuit Judge,
                 and Fust, District Judge.*
                                
                                
                                
                                
         Kirk J. Cedja, with whom Lawson Williams and Shapiro &
Kreisman were on brief for Fleet Mortgage Group, Inc.
         Carl D. Aframe, Aframe & Barnhill, for Kenneth A. Kaneb.

November 8, 1999

                                
                      
    *Of the District of Puerto Rico, sitting by designation.

                   LIPEZ, Circuit Judge.  Fleet Mortgage, Inc. ("Fleet"),
         appeals from the order of the Bankruptcy Appellate Panel
         for the First Circuit affirming an award of damages and
         attorneys' fees by the bankruptcy court to Kenneth A.
         Kaneb pursuant to 11 U.S.C. 362(h).  We review directly
         the bankruptcy court's findings of fact and conclusions
         of law.  See Brandt v. Repco Printers & Lithographics,
         Inc. (In re Healthco Intl'l, Inc.), 132 F.3d 104, 107
         (1st Cir. 1997).  The bankruptcy court found that Fleet
         willfully violated the automatic stay provision of the
         Bankruptcy Code and awarded Kaneb $25,000 for emotional
         distress and $18,220.68 for attorneys' fees and costs on
         appeal.  Fleet contests the finding that the violation of
         the automatic stay was willful and challenges the award
         of damages for emotional distress.  Fleet also seeks
         relief from its pretrial stipulation relating to a
         violation of the stay.  We affirm the decision of the
         Bankruptcy Appellate Panel ("BAP").   
                             I.   
    In 1993, Kaneb filed a voluntary petition for bankruptcy under
Chapter 13 of the Bankruptcy Code.  An eighty-five year old retiree
and widower, Kaneb spent the cold-weather months in Florida and the
balance of the year in Massachusetts.  After the sale of his
Massachusetts residence to pay secured creditors, he converted to
Chapter 7 bankruptcy.  Shawmut Bank, N.A. ("Shawmut"), was the
original mortgagee of Kaneb's second residence, a Florida
condominium.  
    Shawmut sought relief from the automatic stay in order to
initiate foreclosure proceedings.  The bankruptcy court denied
Shawmut's petition.  Kaneb and Shawmut entered into settlement
negotiations without success.  After the failed negotiations,
Shawmut forwarded Kaneb's file to the Florida law firm of Shapiro
& Fishman ("Fleet's counsel") to initiate foreclosure proceedings.  
Shawmut and Fleet merged on November 15, 1995.   
    The file forwarded from Shawmut contained the order of
discharge, dated January 31, 1996, which relieved Kaneb from
personal liability for all debts dischargeable under 11 U.S.C.
523.  The file also contained an unsigned order granting relief
from the automatic stay.  The attorney from Shapiro & Fishman
testified that she knew Kaneb was in bankruptcy but she thought
that the unsigned order for relief from the automatic stay meant
that the bankruptcy judge had granted relief.  Further, she
erroneously believed that Fleet could initiate foreclosure
proceedings lawfully because the bankruptcy court had issued an
order of discharge.  On behalf of Fleet, Shapiro & Fishman filed
a complaint for foreclosure in Florida state court on June 4, 1996.
    Shortly after the initiation of the foreclosure, Kaneb's
attorney informed Fleet's counsel of the automatic stay and faxed
documents confirming this information.  Fleet's counsel placed
Kaneb's file on "hold" status.  Six weeks later, in response to a
letter from Kaneb strenuously protesting the violation of the
automatic stay, Fleet's counsel dismissed the foreclosure suit.   
    During the six weeks that Fleet allowed the foreclosure suit
to languish on "hold" status, Kaneb's neighbors learned of the
foreclosure proceeding.  As a result of a foreclosure notice
published in a local Florida newspaper, Kaneb received a barrage of
colorful mail offering legal and investment services.  These
solicitations, known as "dayglow mail," accumulated in Kaneb's
Florida mailbox.  Neighbors who regularly held his mail for him
when he was in Massachusetts learned of the foreclosure action.  In
addition, one of Kaneb's neighbors erroneously received a
solicitation addressed to Kaneb.
    Once Kaneb's neighbors learned of the foreclosure suit, they
began to avoid him.  The condominium where Kaneb lived is a "gated
community" populated by affluent retirees.  Prior to the initiation
of the foreclosure, he socialized frequently with his neighbors.  
As a widower and retiree, Kaneb's life in Florida revolved around
recreational activities within the condominium complex.  After his
neighbors became aware of the legal proceedings, they stopped
inviting him to social outings.  
    Kaneb brought suit for compensatory and punitive damages for
willful violation of the automatic stay in the District of
Massachusetts Bankruptcy Court.  The court awarded him damages for
emotional distress and attorneys' fees, and the Bankruptcy
Appellate Panel affirmed.  On appeal, Fleet argues for the first
time that there was no violation of the automatic stay despite its
pretrial stipulation to the contrary.  Fleet seeks relief from its
pretrial stipulation and contests the sufficiency of the evidence
of Kaneb's emotional suffering.  
                             II.  
    In examining Fleet's pretrial stipulation, we find that Fleet
stipulated to a set of uncontested facts from which the bankruptcy
judge found a violation of the automatic stay.  However, the
stipulation merely recites historical facts.  Nowhere in the
agreement does Fleet concede that, as a legal matter, it violated
the automatic stay.  Fleet's request for relief from its supposed
stipulation to a violation is, in reality, a request for permission
to argue a legal issue that it failed to raise below.  That is,
Fleet raises on appeal Judge Votolato's sua sponte argument in his
dissent to the decision of the Bankruptcy Appellate Panel that
there was no violation because the foreclosure occurred after
Kaneb's discharge from bankruptcy and the automatic stay does not
apply because Kaneb excluded the Florida property from the
bankruptcy estate by claiming it as exempt.  We will not address
issues raised for the first time on appeal.  See Teamsters Local
No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992)
("If any principle is settled in this circuit, it is that, absent
the most extraordinary circumstances, legal theories not raised
squarely in the lower court cannot be broached for the first time
on appeal.").  We decline to address Fleet's "no violation"
argument.   
    Instead, we accept the conclusion that there was a violation
of the automatic stay and review the trial court's determination
that this violation was willful.  The trial court found that,
"Despite knowing that the stay was still in force, on April 26,
1996 Shawmut forwarded its file to the law firm of Shapiro &
Fishman . . . for the purpose of initiating foreclosure on the
property."  Fleet argues that this action was simply an innocent
mistake.  Further, Fleet contends that its actions were not willful
because they were not taken with "flagrant or reckless disregard"
for its legal obligations.
    Fleet cites no authority for its "flagrant or reckless
disregard" standard and our research discloses none.  We decline to
create a new standard for willfulness.  We similarly reject Fleet's
argument that it is immune from sanctions because it made a
mistake.  A good faith belief in a right to the property is not
relevant to a determination of whether the violation was willful.  
See Tsafaroff v. Taylor (In re Taylor), 884 F.2d 478, 483 (9th Cir.
1989), (quoting INSLAW, Inc. v. United States (In re INSLAW, Inc.),
83 B.R. 89, 165 (Bankr. D.D.C. 1988)). A willful violation does not
require a specific intent to violate the automatic stay.  The
standard for a willful violation of the automatic stay under  
362(h) is met if there is knowledge of the stay and the defendant
intended the actions which constituted the violation.  See Goichman
v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir. 1989); see also
Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re
Crysen/Montenay Energy Co.), 902 F.2d 1098, 1105 (2d Cir. 1990);
Cuffee v. Atlantic Bus. and Community Dev. Corp. (In re Atlantic
Business and Community Corp.), 901 F.2d 325, 329 (3d Cir. 1990).  
In cases where the creditor received actual notice of the automatic
stay, courts must presume that the violation was deliberate.  See
Homer Nat'l Bank v. Namie, 96 B.R. 652, 654 (W.D. La. 1989).  The
debtor has the burden of providing the creditor with actual notice.  
Once the creditor receives actual notice, the burden shifts to the
creditor to prevent violations of the automatic stay.  See Mitchell
Constr. Co., Inc. v. Smith (In re Smith), 180 B.R. 311, 319 (Bankr.
N.D. Ga. 1995).   
    The parties do not contest that Shawmut received actual
notice of the automatic stay.  Indeed, the record reveals that
Shawmut unsuccessfully filed a motion for relief from the stay.  
After the bankruptcy court's denial of the motion for relief,
Shawmut retained the law firm of Shapiro & Fishman to initiate
foreclosure proceedings.  Although Fleet received notice of a
violation when Kaneb's attorney informed Shapiro & Fishman of the
stay, Fleet's counsel failed to dismiss the suit for six weeks.  
Under the applicable standard, Fleet's actions constitute a willful
violation of the automatic stay.
                             III.
     Fleet challenges generally the sufficiency of the evidence of
harm and causation for the $25,000 award for mental anguish and
argues specifically that a showing of mental anguish requires
physical injury or corroborating medical testimony.  We decline to
address Fleet's specific arguments about evidentiary requirements
because Fleet has once again waived these arguments by failing to
raise them below.  The BAP majority noted: "Our examination of the
lengthy record shows Fleet did not question the appropriateness of
the [damages award] on grounds that there was no corroborating
evidence.  Therefore, Fleet is precluded from raising the issue of
corroboration now . . . ."  Similarly, our review of the record
reveals that Fleet did not raise before the lower court the
argument that a plaintiff must have suffered concomitant physical
harm in order to receive damages for mental anguish.  
     In responding to Fleet's general challenge to the sufficiency
of the damages evidence, we note that emotional damages qualify as
"actual damages" under  362(h).  See Holden v. IRS (In re Holden),
226 B.R. 809, 812 (Bankr. D. Vt. 1998)("Emotional distress is an
actual injury . . . . Legitimate human emotions are brought to bear
when one's rights are trampled on."); In re Carrigan, 109 B.R. 167,
170 (W.D.N.C. 1989)("The debtor's actual injury here is somewhat
imprecise, but it is real -- and, it is certainly the result of
[the creditor's actions].); but see In re McPeck, 1991 WL 8405 at
*3 (Bankr. D. Minn. Jan. 29, 1991).  In the instant case, Kaneb
provided specific information about the sharp decline in social
invitations and outings following Fleet's violation of the
automatic stay rather than "generalized assertions" of his
emotional state.  See In the Matter of Robinson, 228 B.R. 75, 85
(Bankr. E.D.N.Y. 1998)(finding insufficient evidence of debtor's
claim of emotional harm based on unsworn and generalized assertion
that debtor was concerned and upset).  He then testified about the
emotional distress he experienced because of these changes in his
life: "[I]ts very irritating.  I don't sleep well.  My eating
habits have changed.  I -- I don't feel that ambitious about
getting out and doing things and meeting people.  It's -- it's not
a pleasant situation to be in . . . . I'm worried concerning where
am I going to live."  An honest accounting of actual damages under
362(h) must include the psychological suffering of this eighty-
five year old retired widower.  We affirm the bankruptcy court's
award of damages for mental anguish.
                              IV.
    In his cross-appeal, Kaneb challenges the Bankruptcy Appellate
Panel's deferment of an award of attorneys' fees pending appeal,
arguing that  362(h)'s mandate that an injured individual "shall
recover actual damages" requires a prompt award of attorneys' fees.  
Further, Kaneb asserts that deferment of fees discourages attorneys
from filing suits to vindicate debtors' rights under the automatic
stay provision and creates a burdensome cycle of "satellite"
appeals over fees.  However, Kaneb cites no authority for the
proposition that an award by the trial court of attorneys' fees may
not be held in abeyance under  362(h) until the trial court's
determination that there was a willful violation of the automatic
stay is affirmed on appeal.  The BAP's order was within its
discretion and not contrary to law.
    Affirmed.

</body>

</html>