**In re INTERNATIONAL FOREX OF CALIFORNIA, INC., Debtors.**

**Bankruptcy No. 99–08078–All.**

United States Bankruptcy Court, S.D. California.

April 6, 2000.

Randall A. Dierlam, San Diego, CA, for William McCray, Jr.

Gary A. Quackenbush, San Diego, CA, for Debtor.

David A. Ortiz, Office of United States Trustee, San Diego, CA, for United States Trustee.

Eugene S. Wilson, San Marcos, CA, for Creditors.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Chief Judge.

### I.

### INTRODUCTION

Kurt Marti, Marianne Marti, Marti Partnership and Marti Trust (collectively, the "Creditors"), creditors of International Forex of California, Inc., the above-captioned chapter 11 debtor and debtor in possession (the "debtor"), seek an order, pursuant to 11 U.S.C. § 362(h), awarding damages, punitive damages, injunctive relief, and attorneys' fees and costs against William McCray, the debtor's chief executive officer, and Randall A. Dierlam, McCray's attorney, for willful and intentional violation of the automatic stay. The Creditors complain that McCray and Dierlam willfully violated the automatic stay of 11 U.S.C. § 362(a) by asserting a cross-complaint against the debtor postpetition in order to improperly obtain a stay of a pending state court action that was proceeding against McCray. The Creditors ask this Court to order that McCray and Dierlam dismiss the cross-complaint. They also request punitive damages and compensatory damages including: (i) the attorneys' fees and costs they incurred in preparing for the state court trial against McCray which became "useless" as a result of the improper stay which arose out of the Defendants' filing the cross-complaint; (ii) an unspecified amount of damages arising out of the delay in the Creditors' ability to prosecute the state court action against McCray; and (iii) the attorneys' fees and costs incurred in making this motion.

McCray and Dierlam (the "Defendants") do not dispute the facts alleged, but contend that the Creditors lack standing to make this motion. The Defendants further contend that their filing the cross-complaint in state court did not violate the stay because it was only an "administrative act to assert a claim" and that the Creditors have not proven any damages.

This Court finds that the Creditors have standing under 11 U.S.C. § 362(h) to bring the Defendants' stay violations to the Court's attention, that the commencement of the cross-complaint violated the automatic stay of 11 U.S.C. § 362(a), and that the Creditors are entitled to recover their costs and expenses in bringing this stay violation to the attention of the Court. In addition, a significant punitive damage award is warranted on these facts due to the Defendants' knowing and purposeful stay violation and their wanton disregard for federal bankruptcy law.

### II.

### BACKGROUND

On October 1, 1999, the debtor filed its voluntary chapter 11 petition. The debtor is in the business of managing private investments in foreign currencies. Prior

to the bankruptcy filing, on August 5, 1999, the Creditors had commenced a state court action (the "State Court Complaint") against the debtor, McCray (the debtor's chief executive officer) and others. The State Court Complaint arose out of the Creditors' combined $65,000 investment in the debtor and alleges *inter alia* claims for breach of contract and breach of fiduciary duty. The Creditors' Complaint alleges that they invested $65,000 with the debtor over the course of several months after first meeting McCray at an investment show in May 1998. *See* Marti Decl. ¶¶ 2–6 at pp. 1–2. From the time of their first investment, the Creditors received regular statements purporting to show that their investment account was rapidly growing. *See* Marti Decl. ¶ 7 at p. 2. The debtor's account managers regularly contacted the Creditors and said their investment was doing well and solicited more funds. *See* Marti Decl. ¶ 7 at p. 2. However, in late July 1999, when the Creditors began requesting the return of their investment, the debtor refused citing errors in its account balances, and the Creditors have not received the return of any part of their investment. *See* Marti Decl. ¶¶ 10, 11, and 13 at pp. 2–4.

Shortly after the Creditors filed their State Court Complaint, the state court judge entered an order requiring the defendants to provide an accounting and segregate the Creditors' investment. *See* Wilson Decl. ¶ 3 at p. 2. When they failed to comply with that order, an order to show cause why the defendants should not be held in contempt issued. *See* Wilson Decl. ¶ 4 at p. 2. Before the contempt hearing could be completed, the debtor commenced this chapter 11 case on October 1, 1999. Because of the bankruptcy filing, the state court stayed all proceedings, prompting the Creditors to dismiss the action against the debtor. *See* Wilson Decl. ¶¶ 6–7 at pp. 2–3. Once the Creditors dismissed the action against the debtor, the state court ordered the contempt motion to resume against McCray. *See* Wilson Decl. ¶ 7 at p. 3.

Immediately after that order was issued, Dierlam informed Eugene S. Wilson, Esq., the Creditors' attorney, that McCray planned to file a cross-complaint against the debtor and reinvoke the automatic stay of the state court action. *See* Wilson Decl. ¶ 8 at p. 3. Dierlam then told Wilson that the Creditors should "abandon their Superior Court action [against McCray] as useless and as a waste of attorney fees." *See* Wilson Decl. ¶ 8 at p. 3. Wilson warned Dierlam that filing a cross-complaint against the debtor would violate the automatic stay. *See* Wilson Decl. ¶¶ 9, 10, and 11 at pp. 3–4. Wilson followed up his oral warning with a letter dated October 28, 1999, which stated:

> This will confirm our conversation at the curb beside the courthouse this morning. Judge Murphy has continued the ex parte hearing to set a continued trial date to ... November 1, 1999 ....

> International Forex of California, Inc. has been dismissed from the action, and you cannot bring that entity back into this case by way of a cross-complaint. To do so would violate the automatic stay and would subject you to criminal penalties under the United States Code and would be vigorously objected to by this office.

*See* Ex. "J," to Wilson Decl.

A few days later, on November 1, 1999, Wilson again informed Dierlam that commencing a cross-complaint would violate the automatic stay. *See* Wilson Decl. ¶ 10 at p. 3. Dierlam responded that the Creditors lacked standing to enforce the automatic stay. *See* Wilson Decl. ¶ 10 at p. 3. Undaunted by Wilson's repeated warnings, on November 18, 1999, one day before the continued trial on the contempt motion, McCray filed the cross-complaint against the debtor, and the state court once again stayed all proceedings. *See* Wilson Decl. ¶¶ 11 –12 at p. 4; and Ex. "L" to Wilson Decl. The cross-complaint alleges that the debtor is a "necessary party" and demands indemnification. *See* Ex. "L" to Wilson

Decl. When Wilson learned that Dierlam had in fact filed the cross-complaint, Wilson warned Dierlam that such filing had violated his ethical duties as an attorney. *See* Wilson Decl. ¶ 11 at p. 4.

## III.

## LEGAL ANALYSIS

A. *The Defendants' Postpetition Complaint Against the Debtor Violated the Stay*

■ Upon the filing of a bankruptcy petition, an automatic stay immediately arises. *See* 11 U.S.C. § 362(a). Among other things, it operates as a stay, applicable to all entities, of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1).

The Ninth Circuit has held that this automatic stay is a critical protection and is quite broad in scope:

> The stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court. The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others.

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 585 (9th Cir.1993) (internal citations omitted); *see also Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.),* 824 F.2d 725, 731 (9th Cir.1987) ("Congress designed [§ 362] to protect debtors and creditors from piecemeal dismemberment of the debtor's estate."). The filing of a cross-complaint in state court against a debtor in possession that could have been brought prepetition, without first obtaining relief from the stay, is a clear violation of § 362(a). *See* 11 U.S.C.

§ 362(a)(1); *Sansone v. Walsworth (In re Sansone),* 99 B.R. 981 (Bankr.C.D.Cal. 1989). The Defendants contend that the cross-complaint against the debtor was merely an "administrative act to assert a claim." *See* Opp'n at p. 5. This position is untenable. The filing of a cross-complaint in state court is the *sine qua non* of an affirmative act against the debtor.

The Defendants cite *Ameritrust Co. v. Opti–Gage, Inc. (In re Opti–Gage, Inc.),* 130 B.R. 257 (Bankr.S.D.Ohio 1991) and *In re Bell & Beckwith,* 50 B.R. 422 (Bankr. N.D.Ohio 1985) as supporting their position. Those cases are simply inapposite here where the debtor is not the plaintiff, the action was not proceeding in bankruptcy court, and indeed the debtor was not even a party to the state court action before the Defendants brought it in. That the cross-complaint alleges that the debtor is a "necessary party" does not change the result. If McCray believed that to be true, he was free to move this Court for an order granting relief from the stay. *See In re Sansone,* 99 B.R. at 986. Alternatively, McCray could have filed a claim in this case. *See* 11 U.S.C. § 501.

In defense of this motion, the Defendants also assert that in certain instances, creditors may be enjoined by the bankruptcy court from proceeding in another court against a principal of the debtor. *See* Opp'n at p. 6. While this may be true, a willful violation of the stay is not the appropriate means to obtain that injunctive relief. McCray may proceed in this Court for that relief if he can establish that it is warranted and supported by appropriate authority.

B. *The Defendants' Violation of the Stay Was Willful*

■ To recover damages pursuant to § 362(h), the individual must show that the stay violation was "willful." *See* 11 U.S.C. § 362(h). "A violation of the automatic stay is 'willful' if the creditor knew of the automatic stay and intentionally performed the actions that violated the stay, and nei-

ther a good faith belief that the creditor had a right to the property nor good faith reliance on the advice of counsel is relevant." *Barnett v. Edwards (In re Edwards)*, 214 B.R. 613, 620 (9th Cir. BAP 1997); *see also Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir.1993). Knowledge of the automatic stay will be imputed if the creditor intentionally carried out the prohibited act with knowledge of the debtor's bankruptcy case. *See Walker v. Midland Mortgage Co. (In re Medlin)*, 201 B.R. 188, 194 (Bankr.E.D.Tenn.1996).

■ Here, the facts surrounding the Defendants' filing the cross-complaint lead inescapably to the conclusion that the violation of the stay was willful. First, McCray, on behalf of the debtor, is the officer responsible for having filed the bankruptcy petition in the first place. Unquestionably he knew of the bankruptcy filing. Dierlam, his attorney, was also aware of the bankruptcy filing; in fact he was repeatedly warned by the Creditors' attorney that filing the cross-complaint would violate the automatic stay. The Defendants' stay violation was willful.

C. *The Creditors Have Standing Under § 362(h)*

■ Citing no authority, the Defendants argue that the Creditors lack standing to pursue damages for stay violations under § 362(h) of the Bankruptcy Code. In reply, the Creditors cite *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613 (9th Cir.1993) and *McRoberts v. S.I.V.I. (In re Bequette)*, 184 B.R. 327 (Bankr. S.D.Ill.1995), and argue that because they are "individuals," they have standing under § 362(h). *Cf. In re Goodman*, 991 F.2d at 618–19 (holding that term "individual" in § 362(h) is not broad enough to include corporations). The statute provides:

> An individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate

circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

At first blush, a plain reading of § 362(h) would appear to grant these Creditors standing to pursue their damages against the Defendants—the Creditors are "individuals." There is no limitation in the statute to an individual *debtor* that would purport to limit recovery under § 362(h) solely to an individual *debtor* injured by a willful stay violation. *See* 11 U.S.C. § 362(h); *see also Homer Nat'l Bank v. Namie*, 96 B.R. 652, 655 (W.D.La. 1989) ("If Congress intended to limit the remedies in § 362(h) to debtors it could have done so by the simple expedient of replacing the term 'individual' with 'debtor.'"). The statute does not appear ambiguous. Moreover, in this chapter 11 case, the Creditors also have standing pursuant to § 1109(b) to raise and be heard "on any issue," which presumably includes stay violations. *See* 11 U.S.C. § 1109(b); *see also Jeffries v. Browning (In re Reserves Dev. Corp.)*, 64 B.R. 694, 699–700 (W.D.Mo.1986) (granting creditors standing to pursue stay violations under 11 U.S.C. § 1109(b)), *injunction dissolved on other grounds*, 821 F.2d 520 (8th Cir.1987).

■ There are two aspects of standing—"constitutional standing" and "statutory standing." *See City of Farmers Branch v. Pointer (In re Pointer)*, 952 F.2d 82, 85 (5th Cir.1992); *Barnett Bank of S.E. Ga., N.A. v. Trust Co. Bank of S.E. Ga., N.A. (In re Ring)*, 178 B.R. 570, 575–76 (Bankr.S.D.Ga.1995). Constitutional standing involves asking " 'whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.' " *In re Pointer*, 952 F.2d at 85 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). This includes finding that: (1) the movant suffered a personal injury; (2) which is fairly

traceable to the defendant's unlawful conduct; and (3) is likely to be redressed by the requested relief. *Id.; In re Ring,* 178 B.R. at 575. On the constitutional front, the Creditors have alleged personal injury, that is, because of the Defendants' stay violations, they have been unable to proceed in state court and have suffered various monetary damages. *See In re P.R.T.C., Inc.,* 177 F.3d 774, 777 (9th Cir. 1999) (noting that for standing purposes, the injury need not be financial). The Creditors' injury is directly traceable to the Defendants' stay violation and could be redressed by this Court. The Creditors have established constitutional standing.

The second inquiry—whether the movants have standing under the Bankruptcy Code (i.e., "statutory standing")—involves asking whether the movant is within the zone of interests sought to be protected by the statutory scheme. *In re Pointer,* 952 F.2d at 86 (after finding that movant has "constitutional standing," the court must then determine whether the movant has "statutory standing" under the Bankruptcy Code); *accord In re Ring,* 178 B.R. at 575; *see also generally James v. Washington Mutual Sav. Bank (In re Brooks),* 871 F.2d 89, 90 (9th Cir.1989). As to this aspect of standing, several courts, including the Ninth Circuit, have noted that the automatic stay of § 362 protects creditors, as well as debtors. *See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 585 (9th Cir.1993) ("The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others."); *Magnoni v. Globe Inv. & Loan Co., Inc. (In re Globe),* 867 F.2d 556, 560 (9th Cir.1989) (citing the legislative history behind § 362 and holding that § 362 is intended to protect the debtor and to assure equal distribution among creditors); *Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.),* 824 F.2d 725, 731 (9th Cir. 1987) ("Congress designed [§ 362] to pro-tect debtors and creditors from piecemeal dismemberment of the debtor's estate.").

Indeed, several courts already have held that creditors have standing under § 362(h). *See, e.g., In re Goodman,* 991 F.2d at 618–19 ("Normally pre-petition creditors ... shall recover damages under 11 U.S.C. §§ 362(h) and 1109(b) for willful violations of the automatic stay."); *In re Bequette,* 184 B.R. at 332 ("It is generally accepted that the remedy of § 362(h) extends to creditors as well as debtors who have sustained injuries from a violation of the stay"); *Homer Nat'l Bank,* 96 B.R. at 655.

While the Ninth Circuit's *Goodman* decision would seemingly end the "statutory standing" inquiry for this Court, *Goodman* did not overrule earlier precedent on this issue, and therefore it is necessary to reconcile *Goodman* with those earlier cases. Prior to *Goodman,* the Ninth Circuit recognized that there was an issue of whether or not § 362(h) grants a creditor standing to assert violations of the automatic stay, but declined to rule on the issue. *See In re Brooks,* 871 F.2d at 90 (noting that movant did not allege that she was a creditor); *In re Globe,* 867 F.2d at 559 (holding that movants did not pursue the action as creditors, but rather as owners).

Prior to *Goodman,* the Ninth Circuit also appeared to have addressed the issue in a different context in *Tilley v. Vucurevich (In re Pecan Groves of Ariz.),* 951 F.2d 242 (9th Cir.1991). The Ninth Circuit held that where a chapter 7 trustee does not appeal an adverse ruling on an alleged stay violation, intervening creditors do not have independent standing to do so. *Id.* at 245. *In re Pecan Groves* is distinguishable from the instant case on several grounds, including: (1) its holding appears limited to an instance where a trustee in control of the debtor opts not to pursue an appeal; (2) it was a chapter 7 case where § 1109(b) was not applicable; and (3) the intervening creditors in *Pecan Groves*

were also guilty of laches. *See id.* at 244, 245.

■ In this Court's view, *In re Pecan Groves'* holding has been overstated for the proposition that the automatic stay is solely for the benefit of the debtor, and a creditor cannot have standing under § 362(h). *See, e.g., Little Pat Inc. v. Conter (In re Soll),* 181 B.R. 433, 443 (Bankr. D.Ariz.1995). This Court finds ample authority for the proposition that the automatic stay is intended to benefit creditors, as well as debtors. *See, e.g., supra Hillis Motors,* 997 F.2d at 585; *In re Goodman,* 991 F.2d at 618–19; *In re Globe,* 867 F.2d at 560; *In re Computer Communications,* 824 F.2d at 731; *In re Bequette,* 184 B.R. at 332; *Homer Nat'l Bank,* 96 B.R. at 655.

Based on the weight of authority on this issue, this Court finds that the Creditors have standing under § 362(h) to seek damages for alleged stay violations. Notably, in this case, it is this chapter 11 debtor's principal who willfully violated the stay (and thus would not likely cause the estate to commence this motion against himself). In so holding, this Court reads *In re Pecan Groves* to stand only for what it held—that where a chapter 7 trustee opts not to appeal an adverse ruling on an alleged stay violation, intervening creditors may not do so. *See In re Pecan Groves,* 951 F.2d at 245.

Another Ninth Circuit case which merits discussion on these facts is *In re Globe,* 867 F.2d at 559, which also predated *In re Goodman,* 991 F.2d 613. The Ninth Circuit in *In re Globe* avoided the issue of whether a creditor had standing under § 362(h) by finding that the movants did not pursue the action as "creditors," but rather as "owners." In *In re Globe,* certain investors of *another entity* asked the bankruptcy court to set aside a sale by the debtor's chapter 7 trustee for having violated the stay. 867 F.2d at 556–58. Although the movants in *In re Globe* asserted claims in the debtor's bankruptcy case, they did not do so until several months after they had commenced the motion

seeking damages for the alleged stay violation. And, those claims were tenuous at best. *See In re Globe,* 867 F.2d at 560. The Court saw through the ruse and found the movants to be "outside parties" holding interests adverse to the estate. *Id.* at 560. Indeed, other courts have also held that third party strangers to an estate do not have standing under § 362(h). *See, e.g., In re Brooks,* 871 F.2d at 90; *Metropolitan Life Ins. Co. v. Alside Supply Ctr. of Knoxville (In re Clemmer),* 178 B.R. 160, 165–68 (Bankr.E.D.Tenn.1995).

Here, the Creditors are indisputably creditors of this estate. Indeed, they even asserted their claims against the debtor in the State Court Complaint prior to the debtor's bankruptcy filing. Unlike *In re Globe,* there are no facts here which suggests that these creditors manufactured their claims against this estate solely to gain standing to pursue the Defendants' stay violation. Therefore, this Court finds that these Creditors have standing to pursue the alleged stay violation under § 362(h).

### D. Compensatory Damages

The Creditors submit that their damages for the Defendants' stay violation include the attorneys' fees and costs incurred in making this motion and the attorneys' fees and costs incurred in preparing for the state court trial against McCray which became "useless" as a result of the Defendants' stay violation. The Creditors also seek "lost interest" on their recovery against McCray.

■ The Creditors are clearly entitled to their attorneys' fees and costs in bringing the stay violation to the attention of the Court; indeed the award of those damages is mandatory. *See* 11 U.S.C. § 362(h); *Sansone v. Walsworth (In re Sansone),* 99 B.R. 981, 987 (Bankr. C.D.Cal.1989). Had McCray succeeded in liquidating his claims against the debtor in state court, he would have obtained an advantage over the creditors of this estate,

whose claims have not been liquidated. This Court has reviewed the supplemental declaration of Eugene S. Wilson, Esq. which details the $11,088 in attorneys' fees and $356.99 in costs incurred in prosecuting this motion against the Defendants. This Court finds the attorneys' fees and costs reasonable in all respects and will award them in full. The Defendants' objection to the reasonableness of those fees is overruled.

■ The Creditors also demand that the Defendants pay them compensatory damages for the "lost interest" on their recovery against McCray and their attorneys' fees and costs in prosecuting the State Court Complaint which became "useless" as a result of the Defendants' violation of the automatic stay. This request requires further analysis because the Creditors, in asserting these claims, are now wearing a different cap. These damages do not arise as a result of the Creditors' claims against *this* estate, but rather arise as a result of their claims against McCray. Wearing this cap, the movants appear to be "outside parties" holding interests adverse to the estate. *See Magnoni v. Globe Inv. & Loan Co., Inc. (In re Globe)*, 867 F.2d 556, 560 (9th Cir.1989). Indeed, the estate itself may have claims against McCray and by allowing these Creditors to pursue their claims against McCray this estate and other creditors may be prejudiced.[1]

The bankruptcy court in *In re Ring* faced a similar issue and held that enforcing § 362 to benefit solely individual creditors (not common to all creditors of the estate) would be outside of § 362's scope. *See Barnett Bank of S.E. Ga., N.A. v. Trust Co. Bank of S.E. Ga., N.A. (In re Ring)*, 178 B.R. 570, 575–577 (Bankr. S.D.Ga.1995). This reasoning comports with the earlier Ninth Circuit case in *In re Globe* where the court declined to award damages under § 362 because the movant pursued the action as third party rather than as creditor. *See In re Globe*, 867 F.2d at 560. To the extent the Creditors are seeking damages for their inability to prosecute their individual claims against McCray, they are pursuing those damages as owners of the claim against McCray and not as creditors of this estate. Therefore, this Court denies this aspect of their compensatory damages request.

### E. *Punitive Damages*

■ Punitive damages are only awarded where the defendant's conduct was malicious, wanton or oppressive. *Sansone v. Walsworth (In re Sansone)*, 99 B.R. 981, 987–89 (Bankr.C.D.Cal.1989).

> Punitive damages are not intended to compensate an injured party; they are by definition meant to punish wrongful action which was intentional or malicious, and to deter the wrongdoer or others from similar conduct.

*Id.* (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)).

The bankruptcy court in *In re Sansone* cited several cases establishing that bankruptcy courts have awarded punitives damages under § 362(h) where the violation was: (1) "wrongful, with a high degree of malice and taken with 'conscious disregard' of the stay;" (2) "emanating from an attitude of disdain for the 'legal technicalities' and accompanied by threats or 'bluffs;'" (3) "'violent and unwarranted behavior;'" (4) "accompanied by a deliberate and arrogant defiance of federal law;" or (5) "an egregious scenario." 99 B.R. at 988.

The Defendants' conduct fits squarely within the kinds of acts punitive damages are designed to punish and deter. Dierlam is an attorney. His actions in this case demonstrate an intentional and flagrant defiance of federal law and a malicious and deliberate disregard of the bank-

---

1. The Court notes that subsequent to the hearing on this motion, the Court converted the case to one under chapter 7 of the Bankrupt-cy Code, and the impartial chapter 7 trustee will now examine any claims against McCray on behalf of the estate.

ruptcy stay. The record is clear that not only did McCray and Dierlam have knowledge of the automatic stay, but were repeatedly warned, both before and after they filed the cross-complaint, that their contemplated actions would violate the stay. In response to those warnings, Dierlam's remark that "creditors cannot enforce the stay" demonstrates that the Defendants knew they were violating the stay and intended to do so, thinking that they could escape the legal consequences by asserting that the Creditors lack standing to bring the stay violation to the attention of the Court.

> An award of punitive damages should be gauged by the gravity of the offense and set at a level sufficient to insure that it will punish and deter. The award must be sufficient to sting the pocketbook of the wrongdoer. The rule in the Ninth Circuit and California is that punitive damages must be proportional; they must be reasonably related to the compensatory damages. However, there is no fixed ratio or formula for determining the proper proportion between the two. The factors to consider in determining a punitive damage aware are (1) the nature of the defendants' acts, (2) the amount of the compensatory award, and (3)[the] defendants' wealth.

*In re Sansone,* 99 B.R. at 989 (internal citations and quotations omitted).

The bankruptcy court in *In re Sansone,* faced a similarly egregious and wanton stay violator. In that case, the Court awarded $25,000 in punitive damages. *Sansone,* 99 B.R. at 989. In another case, in awarding $140,000 in punitive damages (1.5 times the compensatory damage award), the court noted that: "[i]t is of utmost significance that [defendant, an attorney,] was given the opportunity to stop [his] course of action and act responsibly. Yet [defendant] ... plowed on with the ... lawsuit, even when [he] knew that [the

debtor] had filed bankruptcy." *See Beverly Plaza Assocs. v. Saul (In re Kroh Bros. Dev. Co.),* 91 B.R. 525, 538 (Bankr. W.D.Mo.1988).

Here, the Defendants were given at least three warnings prior to their having filed the cross-complaint and at least one other warning after the fact. Their filing the cross-complaint in state court postpetition, without having obtained relief from the stay, is not even colorably outside the scope of § 362. The Defendants ask the Court to be lenient with them because the creditors' *standing* to bring the Defendants' stay violation to the Court's attention is allegedly not clear under established precedent. Even if they were uncertain about a creditor's standing, they were not uncertain of the fact that their conduct violated the stay. Moreover, they could have proceeded cautiously and sought relief from the stay in advance. Instead, they plowed on with the lawsuit, knowingly assuming the risk of punitive damages. The Court finds no circumstances warranting leniency in this case. The Defendants knew full well they were violating the stay and exhibited flagrant and wanton disregard for federal law. Accordingly, a significant punitive damage award is warranted on these facts.

Based on the foregoing, punitive damages are awarded against Dierlam in the sum of $25,000. Because McCray is not an attorney, but yet is equally as culpable as Dierlam in this case, punitive damages are also awarded against McCray in the amount of $5,000.

F. *Injunctive Relief*

The Creditors also ask for an order compelling the Defendants to dismiss the cross-complaint against the debtor that they filed postpetition in state court.[2] However, the Creditors have not cited any authority under § 362(h) which

---

2. This Court notes that in the Ninth Circuit, the cross-complaint is "void" and not "voidable" so the requested directive may not even

be necessary. *See, e.g., In re Boni,* 240 B.R. 381, 384 (9th Cir. BAP 1999).

would permit the Court to grant them the injunctive relief they now seek. Nonetheless, the Creditors are not without remedy. They may pursue a motion for contempt against the Defendants under § 105(a) if the Defendants do not voluntarily dismiss it. *See Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 620 (9th Cir.1993) (even if relief cannot be granted under § 362(h), relief may still be awarded under the court's ordinary civil contempt power pursuant to § 105). Here, the Creditors did not move pursuant to the Court' ordinary civil contempt power nor have they complied with Bankruptcy Rule 9020(b), which governs that relief. A request for such relief is premature. *See* Fed.R.Bankr.P. 9020(b); *Barnett Bank of S.E. Ga., N.A. v. Trust Co. Bank of S.E. Ga., N.A. (In re Ring)*, 178 B.R. 570, 577 (Bankr.S.D.Ga.1995) (declining to entertain alternative relief under § 105 where the pleadings were not specific enough to meet the procedural requirements of Bankruptcy Rule 9020).

## IV.

### CONCLUSION

This Memorandum Decision shall constitute the Court's findings of fact and conclusions of law. The Creditors shall recover damages from the Defendants, as follows: Compensatory damages from the Defendants William McCray and Randall A. Dierlam, jointly and severally, in the amount of $11,444.99; punitive damages from Randall A. Dierlam in the amount of $25,000; punitive damages from William McCray in the amount of $5,000.

The Creditors are directed to LODGE AN ORDER consistent with this decision within ten days of its date of entry.