Honorable Mike K. Nakagawa, United States Bankruptcy Judge
On June 27, 2018, the court heard argument regarding SFR Investment Pool 1, LLC'S Motion to Retroactively Annul the Automatic Stay ("Annulment Motion").[2]
*190 The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.
BACKGROUND
On June 17, 2011, a voluntary Chapter 7 bankruptcy petition was filed, in pro se , by Myong Leeds ("Leeds"). The case was assigned to David Rosenberg ("Rosenberg") as Chapter 7 trustee. (ECF No. 2).[3]
On July 5, 2011, Leeds filed her schedules of assets and liabilities ("Schedules"), along with her statement of financial affairs ("SOFA"). (ECF No. 11). On her real property Schedule "A," Leeds disclosed her interest in a residence located at 8254 Bowman Woods Circle, Las Vegas, Nevada ("Leeds Residence"). Leeds stated under penalty of perjury that the value of her residence was $307,554. On her secured creditor Schedule "D," previously filed with her petition, Leeds listed BAC Home Loans as having a claim in the amount of $610,000 secured by the Leeds Residence.
On July 21, 2011, Rosenberg filed an application to employ the law firm of Howard Kim & Associates ("Kim Firm") as special counsel on behalf of the estate. (ECF No. 13).
On July 29, 2011, attorney Seth D. Ballstaedt ("Ballstaedt") filed a notice of appearance as bankruptcy counsel for Leeds. (ECF No. 18).
On August 15, 2011, an order was entered approving the employment of the Kim Firm as special counsel to the estate. (ECF No. 20).
On September 13, 2011, Ballstaedt filed the Debtor's amendments to her Schedules and SOFA, including a Disclosure of Compensation of Attorney for Debtor(s) - Amended, required under FRBP 2016(b) ("2016 Statement"). (ECF Nos. 25 and 26).
On September 20, 2011, the court entered an order granting Leeds her Chapter 7 discharge. (ECF No. 30). As a result of her discharge, the automatic stay terminated as to Leeds under Section 362(c)(2)(C), but remained in effect as to the Leeds Residence.
On February 29, 2012, an order was entered approving the settlement of a preference action that had been commenced by the Kim Firm on behalf of the bankruptcy estate. (ECF No. 40).
On July 10, 2012, Rosenberg filed a final report and proposed distribution ("TFR"). (ECF No. 54). The TFR stated that the Leeds Residence would be abandoned pursuant to Section 554(c).
On October 15, 2012, an order was entered approving the TFR. (ECF No. 62).
On May 8, 2013, the Leeds Residence was purchased for $42,000 by SFR Investments Pool 1, LLC ("SFR") at a foreclosure sale conducted on behalf of Butler Estates Homeowners Association ("Butler HOA" or "HOA") through its foreclosure *191 trustee, Alessi & Koenig, LLC ("A & K"). See Exhibit "F" to Declaration of Jamie Combs in Support of Bank of America N.A.'s Opposition to SFR Investments Pool 1, LLC's Motion to Retroactively Annul the Automatic Stay ("Combs Declaration").[4] (ECF No. 107).
On September 10, 2013, A & K filed a complaint in State Court commencing the Interpleader Action. See Exhibit "1" to Notice of Removal, filed March 8, 2017, in Alessi & Koenig Bankruptcy ("Removal Notice"). A & K was in possession of excess funds from the foreclosure sale and sought a determination of claims to the funds.
On August 1, 2013, Rosenberg filed a final distribution report ("TDR"). (ECF No. 65). The TDR attested that the Leeds Residence was fully administered and that no funds were received by the bankruptcy estate.
On January 29, 2014, a final decree was entered closing the Chapter 7 proceeding and discharging Rosenberg from any further duties. (ECF No. 72). As a result of the case closure, the automatic stay terminated as to the Leeds Residence pursuant to Section 362(c)(2)(A), and any interest of the bankruptcy estate in the Leeds Residence was abandoned under Section 554(c).
On December 13, 2016, A & K commenced the Alessi & Koenig Bankruptcy proceeding.
On March 8, 2018, Bank of America, N.A. ("BOA") filed the Removal Notice indicating that the Interpleader Action was removed from the State Court to the bankruptcy court pursuant to 28 U.S.C. § 1452(a). (A & K ECF No. 187). Upon removal, the Interpleader Action was assigned Adversary Proceeding No. 17-01038-ABL.
On August 24, 2017, the bankruptcy court entered an order remanding the Interpleader Action to the State Court. (A & K v. Leeds AECF No. 22).
On April 16, 2018, the State Court in the Interpleader Action entered the default of the Debtor, as well as her non-debtor spouse, Marc Leeds.
On May 3, 2018, an order was entered granting the motion of SFR to reopen the Leeds proceeding ("Reopening Order"). (ECF No. 75). The purpose of the motion was for SFR to seek a further court order annulling the automatic stay that arose under Section 362(a) when Leeds filed her Chapter 7 bankruptcy petition.
On May 9, 2018, notice of entry of the Reopening Order was served by SFR ("Reopening Notice"). (ECF No. 76).
On May 10, 2018, SFR filed the instant Annulment Motion, accompanied by the supporting Declaration of Christopher J. Hardin ("Hardin Declaration"). (ECF Nos. 77 and 79). SFR also filed a notice of hearing that the Annulment Motion would be heard on June 13, 2018, accompanied by a Certificate of Service ("COS"). (ECF Nos. 80 and 81).
On June 6, 2018, an order was entered granting BOA's request to continue the hearing to June 27, 2018. (ECF No. 102).
On June 13, 2018, BOA filed an opposition to the Annulment Motion ("BOA Opposition"), accompanied by the Combs Declaration. (ECF Nos. 106 and 107).
On June 18, 2018, the State Court in the Interpleader Action entered an order granting summary judgment in favor of BOA ("BOA SJ Order"). See Exhibit "A"
*192 to Declaration of Jamie K. Combs, Esq. Regarding Clark County District Court's Entry of Order Granting Bank of America, N.A.'s Motion for Summary Judgment ("Supplemental Combs Declaration"). (ECF No. 110). The State Court concluded that BOA had standing to challenge the validity of the Butler HOA foreclosure sale as a violation of the automatic stay, see BOA SJ Order at ¶ 12, that a foreclosure sale conducted in violation of the automatic stay is void ab initio, see id. at ¶ 13, that a void foreclosure sale does not extinguish a deed of trust, see id. at ¶ 14, that an HOA sale is void if the Notice of Delinquent Assessment Lien or the Notice of Default was recorded while the automatic stay was in effect, see id. at ¶ 15, and, that an HOA sale initiated in violation of the automatic stay is void even if the foreclosure sale is conducted after the automatic stay has elapsed. Id. at ¶ 16. The State Court then concluded by determining that the Butler HOA sale was void, id. at ¶ 20, that BOA's deed of trust against the Leeds Residence remains valid, id. at ¶ 21, and that summary judgment be granted in favor of BOA and against SFR. Id. at ¶ 22. The State Court then vacated the trial scheduled in the Interpleader Action. Id. at ¶ 23.
On June 20, 2018, SFR filed a reply in support of the Annulment Motion, accompanied by an additional Declaration of Christopher J. Hardin ("Supplemental Hardin Declaration"). (ECF Nos. 108 and 109).
On June 25, 2018, BOA filed the Supplemental Combs Declaration.
APPLICABLE LEGAL STANDARDS
The automatic stay arises only upon the filing of a bankruptcy petition and is applicable to "all entities." 11 U.S.C. § 362(a). The automatic stay applies to any act to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay also applies to any act to "enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).
Under Section 554(c), scheduled property that is not otherwise administered at the close of a Chapter 7 case is abandoned to the debtor and deemed administered. Under Section 362(c)(1), the stay of acts against property of the estate continues until the property is no longer property of the estate. Under Section 362(c)(2), the stay of all other acts continues until the case is closed, the case is dismissed, or the debtor is granted or denied a discharge. By operation of law, the automatic stay terminated and cannot be reinstated. See Canter v. Canter (In re Canter), 299 F.3d 1150, 1155 n.1 (9th Cir. 2002). After the automatic stay is terminated, a debtor may seek to obtain an injunction from the bankruptcy court. Compare Lattin v. Midland Mort. Co. (In re Lattin), 461 B.R. 832 (Bankr. D. Nev. 2011) (denying creditor's motion to dismiss debtor's adversary complaint seeking injunction under Section 105(a) after automatic stay had terminated under Section 362(c)(3) ).
On request from a "party in interest," the court may grant relief from the automatic stay by terminating, annulling, modifying, or conditioning the automatic stay. 11 U.S.C. § 362(d).
In the Ninth Circuit, if an act is taken by a creditor in violation of the automatic stay, any such act, including a sale of estate property, is void ab initio . See Schwartz v. U.S. (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992). Thus, a party *193 who purchases an asset owned by a bankruptcy estate in violation of the automatic stay does not obtain valid legal title. See, e.g., 40235 Washington St. Corp. v. Lusardi (In re 40235 Washington St. Corp.), 329 F.3d 1076, 1080 (9th Cir. 2003) (purchase of bankruptcy estate property at county tax sale in violation of automatic stay was without effect). The party who violated the stay, however, may seek an order from the bankruptcy court to annul the automatic stay retroactively for cause under Section 362(d)(1). See Schwartz, 954 F.2d at 572-73.
Annulment of the automatic stay "has the effect of retroactively validating acts that otherwise violate the stay." Lonestar Sec. & Video, Inc. v. Gurrola (In re Gurrola), 328 B.R. 158, 172 (9th Cir. BAP 2005). See, e.g., Ceralde v. The Bank of N.Y. Mellon (In re Ceralde), 2013 WL 4007861 (9th Cir. BAP Aug. 6, 2013) (annulment motion granted in involuntary Chapter 7 case in favor of lender that foreclosed without prior knowledge of involuntary proceeding). See also, Sundquist v. Bank of Am., N.A. (In re Sundquist), 566 B.R. 563, 685 (Bankr. E.D. Cal. 2017).
Whether "cause" exists under Section 362(d)(1) to annul the stay is determined under a "balancing of the equities" test. See In re Fjeldsted, 293 B.R. 12, 24 (9th Cir. BAP 2003). The following factors should be considered:
1. Number of filings;
2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4. The Debtor's overall good faith (totality of circumstances test): cf. Fid. & Cas. Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87, 93 (9th Cir. BAP 1988) (chapter 13 good faith);
5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7. The relative ease of restoring parties to the status quo ante;
8. The costs of annulment to debtors and creditors;
9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. Whether annulment of the stay will cause irreparable injury to the debtor;
12. Whether stay relief will promote judicial economy or other efficiencies.
Id. at 25.[5] Five of these factors (1, 2, 4, 6, and 11) focus solely on the debtor ("debtor *194 factors"); three of these factors (3, 5 and 10) focus solely on non-debtors ("non-debtor factors"); three of these factors ( 7, 8 and 9) focus on both the debtor and non-debtor parties ("common factors"); and one factor (12) looks to judicial interests ("neutral factor"). All twelve factors ("Fjeldsted Factors") simply provide an analytical framework and any one factor may be dispositive in comparison to the others. Id. Thus, determining whether annulment is proper is made on a case by case basis. See Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1055 (9th Cir. 1997).
DISCUSSION
During the Chapter 7 proceeding, the automatic stay prevented creditors from enforcing claims against the Leeds Residence without first obtaining relief from stay from the bankruptcy court. On May 8, 2013, however, SFR purchased the Leeds Residence at a foreclosure sale conducted on behalf of the Butler HOA. Under Nevada law, certain portions of HOA assessment liens have priority over residential mortgages. See NRS 116.3116(2)(b). When the homeowner does not satisfy the priority lien, the HOA can foreclose on the residence. The Nevada Supreme Court has concluded that a valid HOA foreclosure sale of residential property extinguishes the lower priority mortgage held by the residential lender. See SFR Inv. Pool 1, LLC v. U.S. Bank, 130 Nev. 742, 334 P.3d 408, 419 (2014). Even though Leeds had scheduled the value of her residence at $307,554 in her Schedule "A," SFR purchased the real property at the HOA foreclosure sale for $42,000.
In a bankruptcy context, the consequence to the residential lender is extreme: the individual debtor's personal liability for the loan is discharged by the bankruptcy, see 11 U.S.C. § 727(b), and the lender's security interest against the residence is extinguished by the foreclosure. See also Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mort., --- Nev. ----, 388 P.3d 970, 973 (2017). The residential lender ends up with no enforceable obligation against the borrower because of the discharge injunction, see 11 U.S.C. § 524(a) (1 and 2), and the purchaser at the HOA foreclosure sale ends up with title to the residence unencumbered by the prior mortgage.
The foreclosure sale for the Leeds Residence occurred on May 8, 2013, but the Leeds bankruptcy case did not close until January 29, 2014. As there was no abandonment of the Leeds Residence under Section 554(a or b) prior to case closure, the Leeds Residence was still property of the bankruptcy estate being administered by Rosenberg at the time SFR purchased the Leeds Residence at the Butler HOA foreclosure sale.
In the instant case, the Reopening Order obtained under Section 350 did not reimpose the automatic stay nor did it revest the Leeds Residence or any other property in the prior Chapter 7 estate. Additionally, there was no injunction entered by this court precluding further action in the A & K v. Leeds Action. As a result, the State Court order granting summary judgment in favor of BOA did not violate the automatic stay nor any order issued by a federal court. Likewise, that summary judgment order did not violate the discharge injunction protecting Leeds because it was not a determination of the personal liability of Leeds with respect to an obligation that was discharged in her bankruptcy. In short, nothing about the State Court summary judgment order in favor of BOA violated the automatic stay, an order of this court, or the discharge injunction. Compare *195 Gruntz v. Cty. of Los Angeles (In re Gruntz), 202 F.3d 1074, 1077-78 (9th Cir. 2000) (state court child support conviction of Chapter 11 debtor in possession was subject to bankruptcy court's exclusive jurisdiction to grant relief from stay, but criminal prosecutions are excepted from application of the automatic stay). While the bankruptcy court has authority to consider the instant Annulment Motion, it has no authority to set aside or otherwise review the State Court summary judgment order.[6]
In the instant case, the automatic stay was violated both by the HOA in seeking to enforce its assessment lien against the Leeds Residence, and by SFR in seeking to obtain possession and control over the Leeds Residence. Both the HOA and SFR are "entities" that were subject to the automatic stay and the Leeds Residence was property of the estate. Under settled automatic stay jurisprudence, both the act of the HOA and the act of SFR are void ab initio . Only SFR, however, has sought to annul the automatic stay. But if the automatic stay is annulled to permit the foreclosure sale to proceed retroactively, separate relief in favor of Butler HOA should not be necessary. SFR argues that annulment of the automatic stay is appropriate under the "Fjeldsted Factors." See Annulment Motion at 5:12 to 6:4; SFR Reply at 12:11 to 15:13. BOA opposes retroactive relief for SFR for a variety of reasons. See BOA Opposition at 9:3 to 14:16. SFR asserts that BOA lacks standing to oppose its request for annulment because a creditor lacks standing to enforce the automatic stay. See SFR Reply at 6:11 to 12:9.
The court having considered the written and oral arguments of the parties concludes that the Annulment Motion must be denied for several reasons.
First, Rosenberg breached his fiduciary duty to the Leeds bankruptcy estate.
In its opposition to the Annulment Motion, BOA alleges, among other things, that Rosenberg established, managed, controlled, and/or advised SFR while he was still the duly appointed Chapter 7 trustee in the instant case. See BOA Opposition at 4:4 to 7:8. It alleges that Rosenberg hired the current manager of SFR (Christopher J. Hardin) and conducted business with SFR through an adjoining office space. See BOA Opposition at 5:19-26.[7] BOA also alleges that Rosenberg obtained authorization to employ bankruptcy counsel (Howard Kim) on behalf of the Leeds bankruptcy estate and later hired Kim to represent SFR. See BOA Opposition at 4:10-19 and 6:18 to 7:8.[8] It further alleges that Rosenberg *196 hired Diamond to attend HOA foreclosure sales in Las Vegas to purchase residential properties on behalf of SFR. See BOA Opposition at 6:1-8. BOA also alleges that both Rosenberg and Kim provided legal guidance in the operation of SFR's business. See BOA Opposition at 6:9 to 7:8.[9] The opposition filed by BOA is accompanied by excerpts of the deposition testimony of Mssrs. Hardin, Diamond, and Kim taken in connection with various civil proceedings in State Court. See Exhibits "A," "C," and "D" to Combs Declaration. That opposition also is accompanied by the affidavit of Adam Bailey ("Bailey Affidavit") who apparently was employed by SFR between 2012 and 2013. See Exhibit "B" to Combs Declaration. Bailey attests that SFR was formed by Rosenberg and his wife, Barbara Rosenberg. See Bailey Affidavit at ¶¶ 5 and 6. He attests that Hardin was not the sole manager of SFR, but that Bailey reported to Rosenberg, to his wife, and to Kim. Id. at ¶ 10.
In response to BOA's serious allegations,[10] SFR submitted only the Supplemental Hardin Declaration. Hardin attests that SFR is a manager-managed limited liability company, that he has been the manager of SFR since October 8, 2012, and that he purchased the Leeds Residence at the HOA foreclosure sale on May 8, 2013. See Supplemental Hardin Declaration at ¶¶ 4 and 6. He further attests that as the sole manager of SFR, he had sole decision making authority on the purchase of properties at the HOA auctions, that he did not discuss or consult with his attorneys the properties to be purchased, and that he had no knowledge of the Leeds bankruptcy at the time of the purchase. Id. at ¶¶ 8, 9 and 12. Although SFR's response does not directly contradict any of the evidence presented by BOA,[11] factual disputes ordinarily would require an evidentiary hearing before a disposition of the Annulment Motion.
At the hearing on the Annulment Motion, however, counsel for SFR acknowledged on the record that Rosenberg did act as counsel for SFR when Rosenberg was still the Chapter 7 trustee in the Leeds case. He also confirmed that Rosenberg was counsel for SFR at the time the Leeds Residence was purchased by SFR at the HOA foreclosure sale. Counsel for SFR was unaware of whether Rosenberg received compensation for his services to SFR, but acknowledged that SFR receives rent for the former Leeds Residence as part of SFR's business operations. Apparently in support of one of the Fjelsted Factors, counsel for SFR argued that Rosenberg's knowledge of the Leeds bankruptcy proceeding should not be imputed to SFR.[12]
*197 A bankruptcy trustee has a fiduciary duty to all creditors of the bankruptcy estate. See generally 3 COLLIER ON BANKRUPTCY , ¶ 323.02[2] and 6 COLLIER ON BANKRUPTCY , ¶ 704.04[1] (Richard Levin and Henry J. Sommer, eds., 16th ed. 2018).[13] Chapter 7 panel trustees are required to "immediately resign from the case" upon discovery of "a conflict of interest or a lack of disinterestedness after accepting appointment" in a case. See Handbook for Chapter 7 Panel Trustees at Page 2-7, Effective October 1, 2012, U.S. Department of Justice, Executive Office for United States Trustees ("Trustee Handbook"). An actual or potential conflict of interest or lack of disinterestedness exists, for example, where the bankruptcy estate has a potential cause of action against a client of the trustee or an entity with whom the trustee has a business relationship. See Trustee Handbook at Page 2-7, example "d." Moreover, a lack of disinterestedness also exists where an appearance of impropriety is present. See Dye v. Brown (In re AFI Holding, Inc.), 530 F.3d 832, 850 (9th Cir. 2008)[14] ("The Code's definition of disinterestedness 'covers not only actual impropriety, but the appearance of impropriety as well.' ").[15]
The record in this matter sufficiently demonstrates that Rosenberg breached his fiduciary duties in this case. While Rosenberg was serving as the Chapter 7 trustee, SFR acknowledges that Rosenberg also acted as counsel for SFR. While Rosenberg was acting as counsel for SFR, SFR acknowledges that it purchased the Leeds Residence while it was still property of the *198 bankruptcy estate. SFR acknowledges that it was a client of Rosenberg when it purchased the Leeds Residence in violation of the automatic stay.[16] Under any spin of the other evidence presented, the record establishes that while serving as the Chapter 7 trustee of the Leeds estate, Rosenberg permitted his private client to obtain possession and control over property of the bankruptcy estate.[17]
Second, service of the Annulment Motion was insufficient.
The Ninth Circuit has stated that retroactive relief from the automatic stay should be granted only in extreme circumstances. See Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 109 (9th Cir. 1995). But see In re Ceralde, 2013 WL 4007861, at *4 (a balance of equities approach is actually applied in finding cause to annul the automatic stay rather than an extreme circumstances standard). Notice of a motion seeking annulment of the automatic stay relief must be given to the appropriate parties. See FED.R.BANKR.P. 4001(a)(1), 9014(a), and 7004(b)(1). Notice must be given in the manner reasonably calculated to apprise the parties of the relief requested and an opportunity to object. See Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ; Low v. Trump Univ., LLC, 881 F.3d 1111, 1120 (9th Cir. 2018) (notice need not be "perfect" but must "reasonably convey the required information"); Nationstar Mort., LLC v. Springs Prop. Owners Ass'n., 309 F.Supp.3d 868, 874 (D. Nev. 2018) ("Due process does not require actual notice...Rather, it requires notice 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' ").
While maintaining that it has standing to seek annulment of the automatic stay, SFR also maintains that BOA lacks standing to assert the protections of the stay in opposition to an annulment request. Citing a circuit decision holding that a secured creditor lacks standing to appeal an adverse ruling on a separate creditor's automatic stay violation, SFR asserts that the only appropriate parties with standing to object to retroactive relief from stay in a Chapter 7 proceeding are the debtor and the bankruptcy trustee. See Annulment Motion at 2:17-18; SFR Reply at 2:2-14, citing Tilley v. Vucurevich (In re Pecan Groves of Ariz.), 951 F.2d 242 (9th Cir. 1991).[18] Assuming that this proposition is correct with respect to a Chapter 7 proceeding closed years after a debtor has received a discharge and the assigned Chapter 7 trustee has been discharged of any further duties,[19] how is notice of an annulment motion accomplished?
*199 In the instant case, Leeds received her discharge on September 20, 2011. The Butler HOA foreclosure was completed on May 8, 2013. The Interpleader Action was commenced on September 10, 2013. On April 17, 2014, an "Affidavit of Due Diligence re: Myong Leeds, an Individual," was filed in the Interpleader Action. See Exhibit 16 to Removal Notice. That affidavit attests that a licensed process server was unable to locate Leeds at various addresses in Las Vegas, Nevada, as well as in Illinois.[20] According to the COS accompanying the instant Annulment Motion, notice of SFR's request was given electronically to Ballstaedt, Rosenberg, the Office of the United States Trustee ("UST"), and counsel for two secured creditors. The Annulment Motion also was served by United States mail on an unsecured creditor and on counsel for BOA.
There is no evidence in the record that Leeds was ever served with the Annulment Motion by personal service, by mail, or any other method. There is evidence in the record that attorney Ballstaedt never agreed to represent Leeds in relief from stay proceedings. See 2016 Statement at ¶ 7.[21] Moreover, under Local Rule 5005(c)(4), electronic service of notice to an attorney does not constitute service on the client unless the attorney is authorized to accept service by the client. Likewise, under Local Rule 5005(e)(4), an attorney's waiver of any right to receive notice by first class mail or personal service does not constitute an agreement to accept service or notice on behalf of a client. Thus, even if attorney Ballstaedt has any contact with a Chapter 7 client for whom a discharge was obtained more than six years earlier, his representation of Leeds expressly excluded this Annulment Motion, and electronic notice to Ballstaedt does not establish the contrary.
There is evidence, of course, that SFR served Rosenberg with the Annulment Motion. Combined with SFR's acknowledgement that Rosenberg actually represented SFR at the time of the very sale in question, however, that evidence gives new and virtually literal meaning to the adjective "self-serving." Moreover, Rosenberg no longer serves on the Chapter 7 trustee panel in this judicial district. Thus, even if Rosenberg remotely could be considered disinterested in connection with the instant matter, he has no legal authority to respond to the Annulment Motion as a fiduciary on behalf of the bankruptcy estate.
Under these circumstances, there is no evidence of adequate notice to any of *200 the parties, i.e., the debtor and the bankruptcy trustee, who apparently have standing to oppose the relief that SFR seeks.[22] Thus, notice reasonably calculated to apprise those parties of the requested relief and of the opportunity to object, has not been given.[23] *201 Third, the doctrine of unclean hands warrants denial of retroactive relief from stay .
Unclean hands is an equitable doctrine that bars a party from seeking equitable relief, reflecting the equitable maxim that "he who seeks equity must do equity." See Mfrs.' Fin. Co. v. McKey, 294 U.S. 442, 451, 55 S.Ct. 444, 79 L.Ed. 982 (1935). "In applying the doctrine, what is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants." Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985) (emphasis added). It "requires balancing the alleged wrongdoing of the plaintiff against that of the defendant and 'weigh[ing] the substance of the right asserted by [the] plaintiff against the transgression which, it is contended, serves to foreclose that right." Northbay Wellness Grp., Inc. v. Beyries, 789 F.3d 956, 959 (9th Cir. 2015). The doctrine is designed to preserve the dignity of the court by preventing it from becoming a participant in inequitable conduct. See In re Rose, 565 B.R. 178, 182 (Bankr. D. Nev. 2017), citing Precision Inst. Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 813, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).
SFR engaged the legal services of Rosenberg while Rosenberg was the Chapter 7 trustee of the Leeds estate and while SFR acquired the Leeds Residence from the Leeds estate. SFR acquired the Leeds Residence for $42,000, compared to the $307,554 value attested by the former owner, Leeds. Rosenberg violated his fiduciary duties as the Chapter 7 trustee of the Leeds estate. As a licensed attorney, Rosenberg also likely violated his duties to SFR under Rules 1.1[24] and 1.7(a)(2) 25 of the Nevada Rules of Professional Conduct. Rosenberg also likely violated his duty to SFR and the UST under Rule 1.11(d) 26 of the Nevada Rules of Professional Conduct.
*202 Bankruptcy courts are courts of equity and this court has exercised its discretion in numerous cases where retroactive relief from the automatic stay has been sought. See, e.g., In re Victor H. Wheatley, Case No. 12-22310-MKN, Order on Motion for Relief from Stay re: 1304 Rawhide Street Las Vegas, Nevada, Docket No. 85, July 31, 2015 (granting homeowners association motion, joined by purchaser, to annul automatic stay to validate sale); In re Lynn C. Burke, Case No. 12-12508-MKN, Order on Ex Parte Motion to Reopen Bankruptcy Case for the Purpose of Retroactively Annulling the Automatic Stay, Docket No. 45, 2016 WL 3536618, April 15, 2016 (granting purchaser's motion to annul automatic stay that had no prior notice of the bankruptcy proceeding); In re Wayne Alan Haddad and Debra Ann Haddad, Case No. 11-13184-MKN, Order on Ex Parte Motion to Reopen Bankruptcy Case for the Purpose of Retroactively Annulling the Automatic Stay, Docket No. 36, May 19, 2015 (granting purchaser's motion to annul automatic stay that had no prior notice of the bankruptcy proceeding and overruling objection by debtors as to the impact of reopening on their credit history). But see In re Gary Lee Smith and Nancy Margaret Smith, Case No. 14-10601-MKN, Order on Motion to Lift Stay and Order on Countermotion for Sanctions and Award of Attorney's Fees, Docket No. 78, December 4, 2014 (denying retroactive relief from stay to permit creditor to continue with postpetition lawsuit alleging negligence claim dischargeable in debtors' Chapter 13 proceeding); In re Danuta Chorzepa and Tadeusz Chorzepa, Case No. 11-27142-MKN, (Amended) Order on SFR Investments Pool 1, LLC's Motion to Retroactively Annul the Automatic Stay, Docket No. 56, May 17, 2018 (denying purchaser's motion to annul automatic stay where automatic stay in debtors' second bankruptcy case had expired under Section 362(c)(3)(A) prior to HOA's commencement of foreclosure sale process). But the record in those cases did not raise the same concerns present in this proceeding nor the same arguments raised in opposition to annulment of the automatic stay.
Under the facts acknowledged by SFR, it acquired the Leeds Residence while engaging the assistance of Rosenberg, which violated his fiduciary duties to the bankruptcy estate. Additionally, Rosenberg likely violated his professional responsibility as an attorney to notify the UST and to obtain its written consent before providing legal services to SFR. By annulling the automatic stay in this instance, the court would become a participant in Rosenberg's and SFR's inequitable conduct. That this court will not do.
Finally, application of the Fjeldsted Factors separately warrants denial of the Annulment Motion. [27]
Most of the previously categorized "debtor factors" do not favor retroactive relief from stay. Leeds has filed only one bankruptcy case and is not a repeat filer attempting to hinder and delay creditors. She has not sought a Chapter 13 *203 super-discharge and has complied with applicable bankruptcy law. If the stay is not annulled, however, the prospect of injury to Leeds arises because legal title to the Leeds Residence has been restored to her. Moreover, Leeds would be on title to real property that she does not occupy, encumbered by a deed of trust securing a discharged loan that is hopelessly in default. A subsequent foreclosure or other resolution of the various claims could jeopardize the fresh start she commenced on September 20, 2011, when she received her Chapter 7 discharge.
None of the "non-debtor factors" favor retroactive relief from stay under the circumstances of this case. No one disputes that Butler HOA violated by the automatic stay when it foreclosed on the Leeds Residence. No one disputes that Butler HOA could have obtained relief from stay during the Leeds bankruptcy proceeding and then proceeded to complete a valid foreclosure sale. No one disputes that if BOA had filed a notice of default on its deed of trust during the Leeds bankruptcy proceeding without first obtaining relief from stay, any subsequent foreclosure sale would have been void. No one disputes that BOA could have obtained relief from stay during the Leeds bankruptcy proceeding and then proceeded to complete a valid foreclosure sale. No one disputes that BOA could have satisfied the priority portion of the Butler HOA lien to prevent the foreclosure sale from being completed. No one disputes that Rosenburg was legal counsel to SFR at the time SFR purchased the Leeds Residence. As between two creditors, i.e., BOA and Butler HOA, the extent of prejudice is extreme: annulment of the stay wipes out BOA's lien under Nevada law, the parties would seek relief from the summary judgment ruling in the Interpleader Action, and BOA is prevented from seeking recovery from Leeds.[28] If the stay is not annulled, the HOA foreclosure sale is void, the parties would proceed in accordance with the judgment in the Interpleader Action, and BOA is still prevented from seeking recovery from Leeds. As between the two creditors and SFR, there was no bona fide purchaser without knowledge because Rosenberg was the Chapter 7 trustee of the bankruptcy estate as well as counsel to SFR when SFR purchased the Leeds Residence.
Most of the "common factors" do not favor retroactive relief from stay. Annulling the stay to restore parties to the "status quo ante" actually would result in Leeds returning to legal title to the Leeds Residence, Butler HOA having an unpaid priority assessment lien, BOA having a deed of trust securing a loan that was discharged by Leeds, and SFR having no legal interest in the Leeds Residence.[29] From a conceptual standpoint, the process is relatively easy but that is not what SFR seeks. Instead, it seeks to restore Butler *204 HOA to a position that it never sought, never obtained, and does not now seek: the ability to complete a foreclosure of its previous priority lien. Under the circumstances, SFR's request comes at little or no cost to Leeds or Butler HOA, but at a substantial economic and legal cost to BOA. Moreover, neither Leeds nor Butler HOA has taken any steps to set aside the foreclosure sale or to seek annulment of the automatic stay.
The remaining "neutral factor" is itself neutral under the circumstances of this proceeding. The Annulment Motion is the only request being made in an otherwise completed Chapter 7 proceeding. The outcome of the request has no additional impact on the economies or efficiencies of the federal courts because an order on a motion for relief from stay under Section 362(d), whether granted or denied, is appealable. See In re Zapata, 656 Fed.Appx. 357, 358 (9th Cir. 2016) ; Buenaventura v. Chau (In re Chau), 2014 WL 547901, at *2 (D. Nev. Feb. 11, 2014). The outcome of SFR's instant request may have an impact on the Interpleader Action, but the record establishes that the State Court effectively concluded the litigation by granting summary judgment in favor of BOA. See discussion at 191-92, supra. Even if this bankruptcy court enters an order granting the Annulment Motion, SFR would be required to seek relief from the summary judgment order entered by the State Court. Thus, retroactive relief from stay also may have no effect on judicial economies of the state courts.
Under these circumstances, when balancing the equities through application of the Fjelsted Factors, the court also concludes that retroactive relief from stay is inappropriate.[30]
For all of the reasons set forth above,
IT IS HEREBY ORDERED that SFR Investment Pool 1, LLC'S Motion to Retroactively Annul the Automatic Stay, Docket No. 77, be, and the same hereby is, DENIED .

The instant motion arises because of certain issues raised in an interpleader action pending in the Eighth Judicial District Court, Clark County, Nevada ("State Court"), styled as Alessi & Koenig, LLC v. Leeds, et al., Case No. A-13-688246-C ("Interpleader Action"). The plaintiff in that action subsequently commenced a Chapter 7 liquidation proceeding denominated Case No. 16-16593-ABL ("Alessi & Koenig Bankruptcy"). Thereafter, the Interpleader Action was removed to this bankruptcy court and assigned Adversary Proceeding No. 17-01038-ABL. The court takes judicial notice under FRE 201 of the papers filed in Interpleader Action and the Alessi & Koenig Bankruptcy. See U. S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ; Conde v.Open Door Mktg., LLC, 223 F.Supp.3d 949, 970 n.9 (N.D. Cal. 2017) ; Gree v. Williams, 2012 WL 3962458, at *1 n.1 (D. Nev. Sept. 7, 2012) ; Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps ), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015).

According to the docket in the instant case, Rosenberg's address was 5030 Paradise Road, Suite B-215, Las Vegas, Nevada 89119.

Exhibit "F" is a copy of a Trustee's Deed Upon Sale. In addition to other information, that document lists the address of SFR as 5030 Paradise Road, Suite B-214, Las Vegas, Nevada, 89119.

Factor 5 refers to the Warren decision by the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP"). In that proceeding, the individual debtor sought to discharge a $40,970 embezzlement judgment through a Chapter 13 plan that paid only $1,000 to his creditors. The embezzlement judgment would have been nondischargeable in Chapter 7 under Section 523(a)(6), but was not excepted from the so-called "super-discharge" in Chapter 13 under then-Section 1328(c). 89 B.R. at 93. The BAP determined that a finding of the debtor's good faith in proposing a plan under Section 1325(a)(3) should take into consideration the amount of the proposed payment to creditors and the presence of a debt that would be nondischargeable in Chapter 7. Id. at 95.

The "Rooker-Feldman" doctrine requires federal courts to give full faith and credit to the decisions of state courts. The doctrine applies in bankruptcy proceedings where the relevant dispute also is raised before a state court. See Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 858-59 (9th Cir. 2008). In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), Justice Ginsburg clarified that the Rooker-Feldman doctrine is "confined to cases of the kind in which the doctrine acquired its name: cases brought by state-courts losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284, 125 S.Ct. 1517 (emphasis added). Where a federal and state court have concurrent jurisdiction over a factual or legal issue, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." Id. at 293, 125 S.Ct. 1517. The Interpleader Action was commenced well after the Leeds bankruptcy was concluded and the summary judgment order was entered by the State Court after the Annulment Motion was filed.

As discussed in notes 3 and 4, supra, Rosenberg occupies Suite B-215 and SFR occupies Suite B-214 at the same Las Vegas street address.

BOA also alleges that during his employment as special counsel to the Leeds estate, attorney Kim also reviewed the Schedules that listed the Leeds Residence as an asset of the bankruptcy estate. See BOA Opposition at 5:4-7.

BOA also objects under FRE 602 (personal knowledge), 701 (opinion testimony), 801 and 802 (hearsay), and 1002 (best evidence) to Paragraphs 7, 8, 9 and 11 of the Hardin Declaration. See Evidentiary Objections to Declaration of Christopher J. Hardin in Support of SFR Investments Pool 1, LLC's Motion to Retroactively Annul the Automatic Stay ("Evidentiary Objection"). (ECF No. 105).

If true, the allegations made by BOA implicate various bankruptcy provisions of Title 18, including 18 U.S.C. §§ 153, 154 and 157.

For example, a limited liability company ("LLC") can be member-managed or manager-managed. See NRS 86.161(d). An LLC can have a non-member manage its operations. See NRS 86.291(3). The non-member manager has no ownership interest in the LLC and need not have any involvement in the formation of the LLC.

Counsel argued that if Rosenberg was an "all-knowing" trustee aware, inter alia , that the HOA foreclosure sale was in violation of the automatic stay, his assumed knowledge still should not be imputed to SFR. A Chapter 7 trustee is not required, however, to be "all-knowing" or otherwise omniscient to understand when property of his or her assigned bankruptcy case remains property of the estate. Only three months after the HOA foreclosure sale, Rosenberg attested in his TDR that the Leeds Residence had been fully administered, even though it had been purchased by his own client in violation of the automatic stay. Had the case been closed before the HOA foreclosure sale, the Leeds Residence would have been administered by abandonment to Leeds pursuant to Section 554(c). As both a Chapter 7 trustee and a bankruptcy attorney, Rosenberg knew or should have known that the HOA sale and SFR's purchase are void.

Attorneys employed by the trustee on behalf of the estate also have a fiduciary duty to the bankruptcy estate. See In re Taxman Clothing Co., 49 F.3d 310, 314 (7th Cir. 1995) ; Everett v. Perez (In re Perez), 30 F.3d 1209, 1219 (9th Cir. 1994) (fiduciary duty also rests with bankruptcy counsel for Chapter 11 debtor in possession).

The AFI Holding decision is commonly cited as authority for denying compensation to estate professionals who fail to disclose activities and connections that create an appearance of impropriety. See, e.g., In re American West Development, Inc., Case No. 12-12349-MKN, "The Acting United States Trustee's Objection to (I) Field Law Ltd.'s Final Application for the Period Beginning on April 12, 2012 and Ending on March 15, 2013 Pursuant to 11 U.S.C. §§ 327, 328(c) and 330 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 9014 and 2016 [Docket No. 904] and (II) James L. Moore's Final Fee Application for the Period Beginning April 10, 2012 and Ending March 15, 2013 [Docket No. 908]," at ¶¶ 78, 79 and 80, Docket No. 935.

Bankruptcy Judge Bert Goldwater observed more pointedly: "Plutarch, in his writings, quoted Caesar: 'I wish my wife to be not so much suspected.' That is the benchmark for trustees in bankruptcy administering millions of dollar in property and money in this Court. The Court and the trustees in bankruptcy must be above suspicion...The trustee in this case and the integrity of the United States Bankruptcy Court must be protected from any prejudiced suggestion of impropriety. The unwarranted inference of improper motive against [the trustee]...requires the Court, on its motion, to relieve the trustee of her duties." In re Mason, 12 B.R. 318, 319 (Bankr. D. Nev. 1981).

Remarkably, SFR asserts that had it known of the automatic stay violation, it likely would not have purchased the Leeds Residence. See Annulment Motion at 4:21-22.

Under these circumstances, it is unnecessary to resolve the Evidentiary Objections to the Hardin Declaration.

SFR also mis-cites the decision of the bankruptcy court for the Southern District of California as a decision of the Ninth Circuit. See SFR Reply at 2:6, citing In re Int'l Forex of Cal., Inc., 247 B.R. 284 "(9th Cir. 2000)," rather than (Bankr. S.D. Cal. 2000). In fact, the correct court in the Int'l Forex voiced its concern that the Ninth Circuit's Pecan Groves decision "has been misstated for the proposition that the automatic stay is solely for the benefit of the debtor, and a creditor cannot have standing under § 362(h). See, e.g., Little Pat, Inc. v. Conter (In re Soll) , 181 B.R. 433, 443 (Bankr. D. Ariz. 1995). This Court finds ample authority for the proposition that the automatic stay is intended to benefit creditors, as well as debtors." 247 B.R. at 291.

The standing of a secured creditor to appeal an order annulling the automatic stay is presently before the Ninth Circuit in connection with U.S. Bank, N.A., et al v. SFR Investments Pool 1, LLC, Case No. 17-16938. That appeal arises out of this judicial district in a case entitled In re Dino J. Petrone and Connie L. Petrone, Case No. 09-32084-LED, cited by SFR in the current proceeding. See Annulment Motion at 8 n.3 and SFR Reply at 14 n.5; see also Exhibit "1" to Annulment Motion. In that case, an order annulling the automatic stay in favor of SFR was entered by the bankruptcy court. The secured credtors' appeal to the U.S. District Court was dismissed for lack of standing to appeal based on the holding in Pecan Groves. The district court's decision was appealed to the Ninth Circuit. SFR then sought to dismiss the circuit appeal for lack of standing. On May 24, 2018, the motion panel of the Ninth Circuit denied the motion to dismiss without prejudice to renewing the arguments in SFR's answering brief. SFR's answering brief is due on July 25, 2018. At the June 27, 2018 hearing on the instant Annulment Motion, SFR did not inform this bankruptcy court of the motion panel's order.

Whether Leeds could be located at this time to effectuate personal service of an annulment request is unknown.

"By agreement with the debtor(s), the above-disclosed fee does not included the following services:...Representation of the debtors in...relief from stay actions..." 2016 Statement at ¶ 7.

This court agrees with the concerns expressed by the bankruptcy court in Inter'l Forex, i.e., that the holding in Pecan Groves has been misstated. See discussion at note 19, supra. In Inter'l Forex, Judge Adler concluded that a prepetition creditor of a Chapter 11 debtor may be an individual entitled to recover damages under Section 362(k), including costs and attorney's fees, for a violation of the automatic stay. 247 B.R. at 291. The court concluded that a non-debtor party violated the automatic stay protecting the Chapter 11 debtor, causing damages to a prepetition creditor in the form of costs and attorney's fees; those costs and attorney's fees were awarded to the prepetition creditor under Section 362(k). Id. at 291-92. That interpretation of Section 362(k) appears to be consistent with the Ninth Circuit's post-Pecan Groves observation that the automatic stay also is designed to protect the interests of creditors from acts taken by other creditors. See Nat'l Envtl. Waste Corp., 129 F.3d at 1054, citing H.Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 6297 ("The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of their claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that."). By contrast, a bankruptcy trustee is not considered to be an individual who is eligible to seek sanctions under Section 362(k). See Havelock v. Taxel (In re Pace), 67 F.3d 187, 193 (9th Cir. 1995). Thus, in spite of the language in Pecan Groves, debtors and creditors can seek to enforce the automatic stay by obtaining damages under Section 362(k), while the assigned bankruptcy trustee cannot.
Fifteen years after Int'l Forex was decided, the BAP issued an unpublished decision in Lei v. Yan (In re Demas Wai Yan), 2015 WL 845570 (9th Cir. BAP Feb. 19, 2015). Without even mentioning the published decision in Int'l Forex, the BAP did exactly what Judge Adler cautioned against: it overstated the holding in Pecan Groves to deny a Chapter 7 creditor standing to recover damages from a debtor who violated the automatic stay by prosecuting claims against the individual creditor that were property of the Chapter 7 estate. 2015 WL 845570, at *4. The BAP reasoned that because creditors had received equal distribution from a fully administered estate, the creditor in question did not have standing to recover damages from the debtor under Section 362(k). Id. That conclusion appears to be a non-sequitur, however, because nothing in the language of Section 362(k) imposes such a limit on an individual who actually has been "injured by a willful violation" of the automatic stay.
Rote application of the Pecan Groves holding leads to the anomalous situation where the same act in violation of the automatic stay is void for some parties but not void for others. This situation creates the risk that led the Ninth Circuit panel in Schwartz to conclude that acts in violation of the stay are void ab initio rather merely voidable: "Concluding that acts in violation of the automatic stay were merely voidable would have the effect of encouraging the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered for a sufficient period of time. This may be an acceptable risk to some creditors when it is measured against a delayed pro rata distribution." 954 F.2d at 572, quoting In re Garcia, 109 B.R. 335, 340 (N.D. Ill. 1989). This appears to be exactly what has occurred in the instant case. Unlike Schrödinger's Cat, an act in violation of the automatic stay should be either void or not void for all purposes, but not both. See Labor Plus, LLC, and its Successor Wynn Las Vegas, LLC, et al., 366 NLRB No. 109, 2018 WL 3007488, at *3 n.8 (N.L.R.B. June 14, 2018) (McFerran, dissenting) (" 'Schrödinger's Cat' is a thought experiment proposed by physicist Erwin Schrödinger in 1935, in which he postulated that under the theory of quantum physics, it would be possible for a cat in a closed box to be both simultaneously alive and dead until the moment that it is observed.").

If the originally assigned Chapter 7 trustee is unavailable, nothing prevents the party seeking relief in a closed proceeding from requesting the UST to appoint a new trustee. Appointment of a new trustee may be particularly appropriate when the moving party is seeking relief from an automatic stay violation that resulted in the removal of property from the bankruptcy estate. Chapter 7 trustees in this judicial district, including Rosenberg, frequently sought and obtained court authorization to complete "short sales" of over-encumbered residential properties upon the priority lender's agreement to carve out a small portion of the sale proceeds for the bankruptcy estate. In a circumstance where a prior foreclosure sale is void ab initio , a new Chapter 7 trustee could exercise his or her business judgment as to whether to simply abandon the likely over-encumbered property again, or to attempt to negotiate a short sale with the residential lender prior to the foreclosure of a priority assessment lien by an HOA.

Rule 1.1 requires a lawyer to "provide competent representation to a client" that includes "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

SFR's assertion at the hearing that Rosenberg's knowledge of the Leeds bankruptcy should not be imputed to SFR is unpersuasive. Ordinarily, a lawyer is a client's agent and clients are considered to have notice of all facts known to their lawyer-agent. See Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1168 (9th Cir. 2002) ; Garcia v. Citicorp Trust Bank FSB, 2009 WL 3103793, at *1 (D. Nev. Sep. 23, 2009). Where the attorney ceases representation of the client and obtains knowledge of a bankruptcy in the course of representation of a different client, the attorney's knowledge will not be imputed to the former client. See, e.g., Perle v. Fiero (In re Perle), 725 F.3d 1023 (9th Cir. 2013). In this case, Rosenberg was both the trustee in the Leeds case and also counsel to an entity that was acquiring property that was an asset of the same bankruptcy estate.

None of the cases denying standing to a creditor to challenge a violation of the automatic stay involve creditors whose consensual liens are permitted to be wiped out through a foreclosure sale by another creditor given statutory priority under state law. In such circumstances, a foreclosure by a reckless HOA has no natural enemies other than the wiped out lien creditor: the individual debtor who lacks the ability to pay the HOA assessments nor the mortgage has no incentive to oppose retroactive relief from stay, and the assigned bankruptcy trustee who has no interest in an over-encumbered asset also has no incentive to oppose retroactive relief.

The "status quo ante" is a term of art referring to the conditions that existed before the challenged action took place. See, e.g., Czyzewski v. Jevic Holding Corp.,--- U.S. ----, 137 S.Ct. 973, 985-86, 197 L.Ed.2d 398 (2017) (structured Chapter 11 dismissal did not restore status quo ante, but distributed debtor's assets in violation of bankruptcy priority scheme).

The court is concerned about the impact to Leeds from the HOA foreclosure sale being void. See discussion at 202-03, supra. After Leeds received her Chapter 7 discharge on September 20, 2011, the HOA foreclosed on the Leeds Residence on May 8, 2013. In granting summary judgment in favor of BOA, the State Court determined that the HOA foreclosure sale is void and BOA's deed of trust against the Leeds Residence remains valid. See discussion at 192, supra. Unless Leeds voluntarily conveys title to the residence to BOA, a foreclosure sale by BOA is likely to ensue. Instead of a post-discharge foreclosure occurring as of May 8, 2013, Leeds faces the prospect of a much more recent foreclosure sale appearing in her credit history. If Leeds is injured by a new foreclosure, the cause arguably would be traceable to the HOA's violation of the automatic stay.